IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

YOLANDA C. B.,[1]  )
 )
       Plaintiff, )
 )
vs. ) Civil No. 17-cv-1201-DGW[2]
 )
COMMISSIONER OF SOCIAL )
SECURITY, )
 )
       Defendant. )

## MEMORANDUM and ORDER

**WILKERSON, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), the pro se plaintiff seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits (DIB) pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff applied for DIB in January 2014, alleging a disability onset date of November 11, 2013. After holding an evidentiary hearing, an ALJ denied the application on November 2, 2016. (Tr. 18-25). The Appeals Council denied plaintiff's request for review, making the ALJ's decision the final agency decision subject to judicial review. (Tr. 1). Plaintiff exhausted administrative remedies and filed a timely complaint with this Court.

---

[1] Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c). See, Doc. 21.

## Issue Raised by Plaintiff

Plaintiff filed a short brief at Doc. 34. She asserts generally that she meets "the basic standards for disability as explained under the Social Security Act." She also asserts, without elaboration, that she has been denied due process as well as legal representation.[3]

## Applicable Legal Standards

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes. Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform her former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 404.1520.

An affirmative answer at either step 3 or step 5 leads to a finding that the plaintiff is disabled. A negative answer at any step, other than at step 3, precludes a finding of disability. The plaintiff bears the burden of proof at steps 1–4. Once the plaintiff shows an inability to perform past work, the burden then shifts to the

---

[3] Plaintiff is pro se here, but she was represented by counsel at the agency level.

Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

It is important to recognize that the scope of judicial review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The Supreme Court defines substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

### **The Decision of the ALJ**

The ALJ followed the five-step analytical framework described above. She determined that plaintiff had not worked at the level of substantial gainful activity

since the alleged onset date. She was insured for DIB only through June 30, 2015. The ALJ found that plaintiff had severe impairments of peripheral neuropathy, degenerative disc disease/right L5 radiculopathy, right shoulder osteoarthritis, and hypertension.

In the statement of RFC at Tr. 21, the ALJ found that plaintiff had the RFC to do light work, limited to no operation of foot controls; no climbing of ladders, ropes, or scaffolds; no crawling; only occasional climbing of ramps and stairs; only occasional balancing, stooping, kneeling, and crouching; no work at unprotected heights or around hazardous machinery; and occasional exposure to pulmonary irritants. She needed a cane to move about workplace.

Although the summary of the RFC at Tr. 21 referred to light exertion work, the decision as a whole makes is clear that the ALJ actually limited plaintiff to sedentary work. The ALJ gave "great weight" to the opinions of the state agency consultants who limited her to sedentary work, and the hypothetical question posed to the VE limited her to sedentary work as well. (Tr. 22, 53).

Based on the testimony of a vocational expert, the ALJ found that plaintiff was not able to do her past relevant work as a desk clerk or school bus driver, but she was not disabled because she was able to do other jobs at the sedentary level that exist in significant numbers in the national economy.

### The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by plaintiff.

1. **Agency Forms**

Plaintiff was born in 1974 and was 40 years old on the date last insured. (Tr. 178). She said she was disabled because of depression, peripheral neuropathy, constant pain in her legs, feet, and thighs, falls while walking and standing, uncontrollable vomiting and nausea, and high blood pressure. She stopped working in June 2013 because she had three "stomach surgeries." She completed one year of college and a trade school program. (Tr. 181-182).

2. **Evidentiary Hearing**

Plaintiff was represented by an attorney at the hearing in August 2016. (Tr. 33).

Plaintiff's twelve-year-old son lived with her, and she had custody of her sixteen-year-old daughter for half the year. She also had a twenty-one-year-old son. She had been on Medicaid since her children were born. (Tr. 35-37).

Plaintiff testified that she could not work because she had pain in her neck from C7 down to both hands, pain in her low back, numbness and tingling and throbbing, and she lost her balance "constantly." She took 'lots" of medication which made her dizzy and drowsy. (Tr. 40-42). She used a cane every day because she was a fall risk. (Tr. 46).

She had some abdominal surgeries for polyps in her stomach, uterine fibroids, and gallbladder removal. The first surgery was in February 2013. (Tr. 37). She still had abdominal pain. (Tr. 50).

Plaintiff said she did not do much on a daily basis. She stayed in bed a lot. Her children did the household chores. (Tr. 44-46). She was depressed, which

made her not want to be around people. (Tr. 48).

A vocational expert (VE) also testified. The ALJ asked her a hypothetical question that comported with the RFC assessment set forth at Tr. 21, except that the ALJ asked the VE to assume a limitation to sedentary work. The VE testified that a person with this RFC assessment could not do plaintiff's past work, but she could do other jobs at the sedentary exertional level. The sedentary jobs she identified (document scanner, circuit board assembler, and packager) were simple, routine, repetitive jobs and did not require interaction with the public. (Tr. 53-54).

### 3.   Relevant Medical Records

Plaintiff had surgery to remove uterine fibroids in February 2013. (Tr. 553). Her gallbladder was removed in June 2013, and her doctor said she "recovered well." (Tr. 555).

In September 2013, an MRI of the lumbar spine showed no disc herniation or stenosis. In April 2014, an x-ray of the right shoulder showed mild osteoarthritis. In July 2014, cervical x-rays were normal. (Tr. 502-505).

In August 2013, plaintiff's primary care provider, Dr. Mannan-Hilaly, saw her for numbness in her feet and nausea. Musculoskeletal exam was normal. (Tr. 525-526). The doctor diagnosed peripheral neuropathy in November 2013. (Tr. 523-524). At visits through February 2015, the doctor noted normal musculoskeletal exams except for one visit where her gait was slow secondary to pain and a note that she used a cane. (Tr. 511-526).

Dr. Mannan-Hilaly referred plaintiff to Dr. Du, a pain management specialist.

She saw him in May 2014, complaining of pain in her right shoulder, low back, and right leg. On exam, the range of motion of the right shoulder was slightly limited due to pain. There was tenderness at L5-S1and in the bilateral SI joints. EMG showed right radiculopathy. Lumbar MRI did not demonstrate disc herniation or spinal canal stenosis. Dr. Du administered steroid injections in the low back and right shoulder. Plaintiff reported improvement in June 2014. In July 2014, Dr. Du noted that she had no tenderness in the cervical spine. Range of motion in the lumbar spine was increased and straight leg raising was negative. Sensation, strength, deep tendon reflexes, and gait were all normal. Right shoulder motion was normal except for limited abduction. Two weeks later, she complained of neck pain. Gait was again normal, as were sensation, strength, and deep tendon reflexes. (Tr. 422-440).

In August 2014, Dr. Adrien Feinerman did a consultative exam. Plaintiff had a cane and said she was unable to walk or stand without it. She said she had pain in her low back and right shoulder, but she was able to do fine and gross manipulations without difficulty. Exam showed normal range of motion of the neck and limited range of motion of the lumbar spine and right shoulder. Motor strength was normal throughout. Fine and gross manipulations were normal. Sensory exam was normal. She would not stand or walk without her cane. (Tr. 456-467).

Plaintiff was seen by a neurologist at Washington University School of Medicine in August 2014. Exam showed normal muscle strength except for some give way weakness of the right deltoid and triceps related to right shoulder pain.

7

There was a pinprick gradient on sensory exam in the upper and lower extremities. Proprioception (perception or awareness of the position and movement of the body) was preserved. Her gait was antalgic. The doctor thought her symptoms were related to small fiber neuropathy. He increased the dosage of Gabapentin. (Tr. 852-854). A skin biopsy was done in March 2015 because of complaints of burning pain in the hand and foot. The result substantiated small fiber neuropathy. (Tr. 848-849). The dosage of Gabapentin was again increased. (Tr. 842).

Plaintiff was admitted to the hospital for a hysterectomy in April 2015. She had "the expected postoperative abdominal pain." Dr. Mannan-Hilaly examined her. The examination was unremarkable. (Tr. 678).

Plaintiff was last insured for DIB as of June 30, 2015.

She was evaluated in the Neurology Clinic at St. Louis University Hospital in November 2015 for neuropathy. On exam, sensation was intact to light touch and pinprick in all four extremities. Motor strength was full. Her gait was normal, and she was able to heel and toe walk without difficulty. Tandem walking was stable. Romberg stance and test were stable. (Tr. 813-817).

4. **State Agency Consultants**

Two state agency consultants assessed plaintiff's RFC based on a review of the record. These reviews were done in August 2014 and May 2015. (Tr. 61-63, 75-77). Both concluded that she was capable of a limited range of sedentary work.

**Analysis**

The ALJ reasonably concluded that the record supports a conclusion that

plaintiff was capable of a limited range of sedentary work as of her date last insured. Plaintiff does not offer any specific challenge to that conclusion beyond asserting that she meets the basic standards for disability.

The ALJ fairly summarized the relevant medical evidence. The ALJ's assessment of plaintiff's RFC was supported by the opinion of two state agency consultants. It is proper for the ALJ to rely upon the assessment of a state agency consultant. *Schmidt v. Barnhart*, 395 F.3d 737, 745 (7th Cir. 2005); *Cass v. Shalala*, 8 F.3d 552, 555 (7th Cir. 1993). "State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act." SSR 96-6p, 1996 WL 374180, at *2.

The ALJ properly rejected the opinion of Dr. Mannan-Hilaly that plaintiff could not do even sedentary work. She rejected this opinion because it conflicted with the doctor's own treatment notes and because the doctor assigned deficits that plaintiff did not even complain of. Dr. Mannan-Hilaly treated plaintiff, but the ALJ was not required to fully credit the opinion because of that status; "while the treating physician's opinion is important, it is not the final word on a claimant's disability." *Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996) (internal citation omitted). A treating source's medical opinion is entitled to controlling weight only where it is supported by medical findings and is not inconsistent with other substantial evidence in the record. *Brown v. Colvin*, 845 F.3d 247, 252 (7th Cir. 2016), citing *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000). The ALJ is required only to "minimally articulate" her reasons for accepting or rejecting

evidence, a standard which the Seventh Circuit has characterized as "lax." *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008); *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008). The ALJ easily met the minimal articulation standard here.

The Court has carefully reviewed the record and the ALJ's decision and has not detected any legal errors. The medical evidence and the state agency consultants' opinions support the conclusion that plaintiff was capable of doing some sedentary jobs as of her date last insured. Even if reasonable minds could differ as to whether plaintiff was disabled at the relevant time, the ALJ's decision must be affirmed if it is supported by substantial evidence, and the Court cannot substitute its judgment for that of the ALJ in reviewing for substantial evidence. *Burmester,* 920 F.3d at 510; *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012).

Plaintiff also asserts that she has been denied due process.

A person who applies for social security disability benefits has the right to a hearing before a fair decisionmaker. *Keith v. Barnhart*, 473 F.3d 782, 787–88 (7th Cir. 2007). That right is violated where "the decisionmaker displayed deep-seated and unequivocal antagonism that would render fair judgment impossible." *Spicher v. Berryhill*, 898 F.3d 754, 756 (7th Cir. 2018) (internal quotation marks and citations omitted). There is no indication that the ALJ in this case displayed such antagonism or was in any way unfair to plaintiff.

Lastly, plaintiff complains that she was denied legal representation. As the Court explained in its order denying her motion for appointment of counsel, she has no statutory or constitutional right to counsel here, she did not demonstrate that she made a diligent attempt to obtain counsel on her own, and there was

nothing before the Court to indicate that she could not coherently present her case. See, Doc. 12.

## Conclusion

After careful review of the record as a whole, the Court is convinced that the ALJ committed no errors of law, and that her findings are supported by substantial evidence. Accordingly, the final decision of the Commissioner of Social Security denying plaintiff's application for disability benefits is **AFFIRMED**.

The Clerk of Court is directed to enter judgment in favor of defendant.

**IT IS SO ORDERED.**

**DATE: February 21, 2020.**

**DONALD G. WILKERSON**
**U.S. MAGISTRATE JUDGE**